## JACK E. LEE *v.* STATE OF INDIANA

[No. 3-476A90. Filed December 1, 1977.]

*Howard S. Grimm, Jr., Grimm & Grimm*, of Fort Wayne, for appellant.

*Theodore L. Sendak*, Attorney General, *John P. Avery*, Deputy Attorney General, for appellee.

HOFFMAN, J.—Appellant Jack E. Lee was tried without a jury and convicted of conspiracy for malicious prosecution pursuant to IC 1971, 35-1-113-1 (Burns Code Ed.[1]). Lee was given a thirty-day suspended sentence in the Allen County jail and fined in the sum of $100. Appellant questions whether the trial court erred in admitting over objection the tape of an incriminating telephone

---

1. IC 1971, 35-1-113-1 (Burns Code Ed.), provides as follows:

"Malicious prosecution or conspiracy to maliciously prosecute a person.—If any person shall maliciously and without probable cause attempt to cause an indictment to be found, or other prosecution to be commenced against any person for any crime or misdemeanor; or if two [2] or more persons shall conspire together for such purpose, the person so sought to be indicted or otherwise prosecuted being innocent, such person or persons so offending, shall, on conviction, be fined not more than one thousand dollars [$1,000], to which may be added imprisonment in the county jail not less than ten [10] days nor more than six [6] months."

conversation and whether it erred in allegedly denying his right to final argument at the close of the evidence.

The facts most favorable to the State reveal that appellant Lee was engaged in the bail bonding business. As such he had occasion to employ one Wayman Patterson to make collections and gather information on persons who had violated their bail provisions. Lee was also involved with Richard E. Milhem, Sr. providing bail bonds through Patterson for his release on several criminal charges and thereafter securing from him similar suitable business information as well. However the separate contacts between Patterson and Milhem deriving from their mutual acquaintance with Lee were generally acrimonious because of rivalry over a woman. Furthermore, in November or December of 1973, Lee terminated his business relationship with Patterson because he had been dealing with others concerning his bail business. Thereafter Patterson testified as a witness against Lee before the Allen County Grand Jury in its investigation of local bail bonding practices.

Apparently as a result of these unfavorable dealings and because of a mutual dislike for Patterson, appellant and Milhem formulated a plan to implicate him with the commission of a criminal offense by planting a box of heroin on his car. On February 6, 1974, Milhem successfully placed the box on Patterson's bumper and notified police that an arrest could be made. However Patterson discovered the box and put it in a snowbank so that when he was stopped by police he was without the contraband. Subsequently Patterson surmised the scheme against himself and reported it to police. Accordingly he took the officers to where he had put the box in the snow and identified Milhem as the probable perpetrator. Thereafter the police picked up Milhem and questioned him about the incident. He gave them a video statement incriminating appellant. In conjunction therewith Milhem also suggested that he make a telephone call to Lee from one of the police detective's offices. This was accomplished with a tape recording thereof being made with Milhem's consent.

The resulting tape implicating appellant is, in pertinent part,

as follows:

"Milhem:   What did you find out?

"Lee:   Haven't heard a thing from down there and I didn't make any calls.

"Milhem:   Oh, yeah.

"Lee:   No, I haven't heard a thing. Have you seen anything?

"Milhem:   Yeah, I seen him. I seen him last night at home. He's still got the same car and everything.

"Lee:   Uh.

"Milhem:   Evidently, whatever happened didn't go down or something. I don't know.

"Lee:   Sure as hell must not have.

"Milhem:   So what do you want to do?

"Lee:   Well, hell, if it didn't work once, they're going to be watching and you don't dare try it the second time.

"Milhem:   Well, you know, I don't know. You can't never tell.

"Lee:   I don't know. I don't know what to tell you.

"Milhem:   Well, I've got money invested in it now anyway."

Appellant objected at trial to the admission of this evidence. On appeal Lee offers two arguments in support of his contention that the tape recording of the conversation with Milhem should have been suppressed.[2] He argues first that his rights were violated under the holding in *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. In *Massiah*, after the defendant had been indicted, a co-actor agreed to cooperate with officials by securing incriminating remarks through a transmitter installed in his car. The court found such evidence inadmissible holidng that police officials could not eavesdrop to secure incriminating statements from a suspect who had already been indicated without first advising him of his constitutional rights.

---

2.   The wiretap provisions of the Omnibus Crime Control and Safe Streets Act of 1968, which prohibit interception and disclosure of wire communications, do not apply where consent of *one* of the parties to the communication is secured. *See*, 18 U.S.C. § 2511(2)(c).

However in United States v. Osser (3d Cir. 1973), 483 F.2d 727, the court emphasized the fact that *Massiah* applies only where a defendant's post-indictment statements were solicited by police and were used to prove the offenses for which he had originally been indicted. In the case at bar, appellant had not been indicted at the time of the telephone conversation on February 6, 1974. Rather Lee was indicted on February 20, 1974. Accordingly appellant's reliance on *Massiah v. United States, supra,* is inappropriate and his argument based thereon must fail.

Appellant's second contention is that he cannot waive his right against self-incrimination without first being advised of his rights pursuant to *Miranda v. State of Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. However, the court in *United States v. Hodge* (6th Cir. 1976), 539 F.2d 898, rejected the argument that an unsuspecting defendant should be afforded his *Miranda* warnings before a telephone recording is made of his statement.

The court noted that such warnings need be given only in the specific situations where the defendant is already in custody and the interrogation was from the police. Obviously Lee had not been taken into custody nor was he under police duress at the time the recording was made. His remarks to Patterson were completely voluntary. In this context it is clear that no one has a constitutionally protected expectation that the person to whom he voluntarily reveals incriminating information will keep it secret. Therefore no constitutional infirmity existed in the procedure used to obtain the recording of the telephone conversation here in question. The recording was properly admitted as part of the State's evidence.

Appellant next contends that the trial court erred in depriving him of his right to have counsel make a final argument. While it may be that the opportunity to make final argument is required as a basic element of the adversary criminal process, *Herring v. New York* (1975), 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593, such does not preclude a waiver of the same as in the case at bar. *See, Casterlow v. State* (1971), 256 Ind.

214, 267 N.E.2d 552. No showing has been made that appellant requested final argument or was denied an opportunity to make one. Without having availed himself of the opportunity it cannot be claimed that the trial court denied him the right.

Accordingly the judgment of the trial court is affirmed.

Affirmed.

· Garrard, J. concurs.

Staton, P.J. concurs with opinion.

## CONCURRING OPINION

STATON, P.J.—I concur with the majority opinion, however, the waiver of summation deserves additional comment. The record and Lee's Brief indicate that the trial judge left the courtroom immediately after making these remarks which followed rebuttal evidence by the State:

> "THE COURT: Well, Gentlemen, on CCR-74-29, that's this license business, this runner thing, there's no such negligence proven in the evidence here and I can't find very much essence to that, so there's going to be a finding of not guilty there. On the other one, I'm going to listen to the tape and I've got to make my own conclusion about that. I think this other one is just a happenstance sort of a thing. We've got the testimony of Mr. Patterson and no one could believe him under oath or on his deathbed as far as I'm concerned, nor Mr. Milhem. I couldn't believe him on his deathbed either. I'll have to look at some other thing here."

Whether the defense counsel was given an adequate opportunity to object under these circumstances is questionable. As Lee points out in his brief "different judges bring different well-formed personalities to the Bench and to say that counsel should have followed the Judge from the Courtroom demanding that he hear final argument or demanding that they be allowed final argument before his decision was announced—and no date for that decision was set, is to demand the impossible of counsel."

The overwhelming weight of authority, in both federal and state courts, is that an accused is denied his right to make a defense if he is denied an opportunity to make a final argument.

*Herring v. New York* (1974), 422 U.S. 853, at 859, 95 S.Ct. 2550, 45 L.Ed.2d 593. Although *Casterlow v. State* (1971), 256 Ind. 214, 267 N.E.2d 552, holds that the right is waived if an objection is not made, *Casterlow* presumes that the opportunity to objection is available. By far the better practice would be for the trial court to expressly inquire whether counsel has a final argument or summation. If the reply is negative, a very clear record of waiver exists, and there is no question of denial of an opportunity to make a summation.

NOTE—Reported at 369 N.E.2d 1083.