Carl Nathaniel **WILLIAMS**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 879S228.

Supreme Court of Indiana.

Dec. 8, 1980.

Charles H. Graddick, Gary, for appellant.

Theodore L. Sendak, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant and his wife, Diane Williams, were indicted by the Grand Jury of Lake

County for conspiracy to commit murder, a class A felony, Ind.Code § 35–41–5–2 (Burns 1979). Both were convicted in a trial by jury, and appellant received a sentence of twenty–five years. On appeal he raises two issues:

(1) whether the evidence is sufficient to support his conviction; and

(2) whether entrapment was present as a matter of law.

The evidence when viewed most favorably to the verdict discloses the following:

Appellant, his wife, and an undercover policeman posing as an illegal drug dealer were together in the dining room of appellant's house, when the wife discovered an article on the front page of a local newspaper written by one Alan Doyle which described her arrest and that of appellant on charges of being in possession of two stolen cars. She became angry and showed the article to appellant.

Appellant read the article for himself. His wife asked what he was going to do about the article. Appellant then said that he wanted something done about it and said very loudly, "those lousy bastards. They've done it to me again." The policeman interjected that he ought to see a lawyer. The wife said lawyers would not do any good. Appellant agreed. He said that he was tired of dealing with lawyers.

The wife, wringing her hands, again asked appellant what he was going to do about the article. Appellant replied that he wanted the man shut up, and asked the undercover policeman whether he would undertake an extra service, and the policeman asked what he meant by that. Appellant replied that he wanted to stop this kind of malicious slander. The policeman said that just breaking their legs and arms would not shut them up. The wife agreed.

Appellant again asked the policeman if he would like to perform an extra service, and added "I want Alan Doyle killed. I never want to see or hear of him again." Ms. Williams was standing at the time with her hand on her husband's shoulder.

The policeman said that he did not do such things himself but could put appellant in contact with somebody who would. He said further that such people require specific knowledge about the intended victim.

The wife stated that she knew someone down at the newspaper and gave the name. Appellant offered to go down to the newspaper himself. His wife discouraged him in that.

Appellant then got up and went to another part of the house and returned with a walkie–talkie radio which he gave to the policeman saying that it was a Gary police radio and would help him out. As the policeman prepared to leave he told them again that he needed to know specifics about the reporter. Ms. Williams said she could handle that and agreed to supply such information to him. The policeman then left with the radio, promising to contact them the next day.

Appellant was visited the following day by the undercover policeman who was accompanied by another policeman posing as a contract killer. The second officer had a body transmitter secreted on his person. It was agreed in a conversation that appellant would pay a total of $1000 for killing Alan Doyle and actually paid $500 at the time to the second officer and agreed to pay an additional $500 after the task was completed.

Several days later the policeman telephoned appellant and his wife. In this conversation which was also recorded the wife made a veiled and general statement in which she revealed that she knew the reporter was to be "taken care" of, and appellant made a statement which confirmed his obligation to get specific information about the reporter's habits.

Several days thereafter, appellant and the two undercover policemen drove through the city and appellant pointed out the building in which the reporter worked.

■ (1) In challenging the sufficiency of evidence appellant writes that the State's burden to show an agreement has not been met and that if an agreement is present, it

is between appellant and a police officer, and that the law will not permit a conviction under such circumstances. In resolving this issue, we do not resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State* (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Taylor v. State* (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State* (1970) 253 Ind. 536, 255 N.E.2d 657. The statute defining the crime of conspiracy reads as follows:

"(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a class A felony.

"(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

"(c) It is no defense that the person with whom the accused person is alleged to have conspired:

(1) has not been prosecuted;

(2) has not been convicted;

(3) has been acquitted;

(4) has been convicted of a different crime;

(5) cannot be prosecuted for any reason; and

(6) lacked the capacity to commit the crime." Ind.Code § 35–41–5–2 (Burns 1979)

The question here is whether the evidence warranted the jury in concluding that appellant, with the intent to commit a homicide, agreed with another person to commit that offense. From the evidence recited above the trier of fact could have concluded that a scheme to kill Alan Doyle was formed around the dining room table in appellant's house when the article was first under discussion. Appellant, his wife, and the undercover officer were each participants in it. Appellant called for the killing of Doyle. Appellant's wife agreed to cooperate to accomplish that object by her assent and her offer to procure specific information regarding Doyle's habits. In so doing she clearly associated herself with the illegal plan. Appellant completed the offense, for both himself and his wife, when, on the day following the initial conversation, he delivered $500 to the undercover officer to perform the killing. This was an overt act in furtherance of the agreement. There was additional purposeful behavior in furtherance of the scheme, when appellant pointed out Doyle's work place to the police officer posing as the actual assassin. The evidence is sufficient to warrant the verdict of guilty.

■ Appellant appears to argue that the fact that one of the conspirators was a police officer should demonstrate conclusively the insufficiency of evidence or the inapplicability of the statute. This argument was rejected in *Garcia v. State* (1979) Ind., 394 N.E.2d 106. There we held that it was no defense to a conspiracy charge under our present statute that the person with whom the accused person is alleged to have conspired is an undercover police agent feigning cooperation and agreement.

■ (2) Appellant next contends that the defense of entrapment was established as a matter of law. This defense is governed by statute which provides:

"Entrapment.–(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law–enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

"(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment." Ind. Code § 35–41–3–9 (Burns 1979)

When the defense of entrapment has been raised, as it was in this case by the testimo-

ny of the undercover police officer the successful prosecution of the case becomes dependent upon whether the State can prove that the prohibited conduct of the accused was not the product of the efforts of the law enforcement official involved *or* that the accused was predisposed to engage in such conduct anyway. *Hardin v. State* (1976) 265 Ind. 635, 358 N.E.2d 134.

But for the fact, unknown to appellant at the time, that the man posing as an illegal drug dealer was an undercover policeman, the evidence presented at the trial when taken as a whole would have warranted a verdict of guilty against that man as a co-conspirator. However, the jury could also have consistently inferred that the conversation supplied by him in the dining room of appellant's house did not produce the plan or purpose to kill Doyle. The trier of fact could reasonably have concluded that the plan was formulated and joined in by appellant because of his personal anger and frustration at the injury he felt from the newspaper article, made more violent and bitter by his wife's insistence and enthusiasm for some form of revenge. Appellant rejected the idea of seeing a lawyer, and requested instead that the undercover policeman undertake an "extra service", and angrily said that he wanted Doyle "shut up". The officer asked then what he meant by shutting somebody up. Appellant responded that "he wanted to stop this kind of malicious slander." The officer then flatly stated, "just by breaking their legs and arms necessarily wouldn't shut them up." Appellant's wife agreed and said "that's right". Appellant then asked the undercover officer again if he would like to perform an "extra service". The officer asked him what he meant by that. It was then that appellant said he wanted Doyle killed.

■ Appellant argues that the statement of the officer regarding the breaking of arms and legs implanted the idea of killing into his mind and in so doing produced the plan to kill Doyle. Two reasons demonstrate the invalidity of this position. First, appellant used the phrase "extra service" both before and after the officer's suggestive comment. It served to convey his meaning on both occasions, and it is reasonable to infer that it carried the same meaning on both occasions, i. e., to kill.

Second, in order for the suggestive comment of the officer to have produced prohibited conduct, it must have had a persuasive or other force causing that conduct. The comment had no such force. It was not a question calling for an answer, but a flat logical assertion, and appellant's wife immediately agreed to it. When appellant thereafter asked the officer again whether he would do an "extra service", and upon inquiry translated that request into his desire to have Doyle killed, that which was activating him was his own thoughtful consideration and his desire to achieve revenge, and not the comment of the officer. We are satisfied that evidence was sufficient to show that appellant was not "innocently lured and enticed to commit the illegal act." *Gray v. State* (1967) 249 Ind. 629, 231 N.E.2d 793.

■ Appellant also isolates two points in the record which he contends show that he tried to disassociate himself from the idea of killing Doyle, but was persuaded by the undercover officers from doing so. At one point appellant told the agents in the course of a telephone conversation to hold off. In context this request was made to give appellant time to gather the specific information regarding the victim. It was therefore in furtherance of the scheme and not contrary to it. At the other point in the record indicated by appellant we find no inference relative to this contention.

The evidence was sufficient to negate the defense of entrapment. The defense was, therefore, not established as a matter of law.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.