**Leon TOWNSEND, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–479A110.

Court of Appeals of Indiana, Second District.

April 13, 1981.

Rehearing Denied June 12, 1981.

Robert Leirer Justice, Logansport, for appellant.

Theodore L. Sendak, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Following trial by jury, Townsend was convicted of delivering a Schedule II controlled substance and conspiracy to commit a felony. I.C. 35–24.1–4.1–2 (Burns Code Ed.1975); I.C. 35–1–111–1 (Burns Code Ed. 1975).[1] The following issues are presented for review:

1) Whether the trial court erred in ruling that the state may unilaterally raise and rebut the entrapment defense in its case-in-chief;

2) Whether the trial court committed error in instructing the jury that multiple sentences would be served concurrently;

---

1. These two statutes were repealed by the criminal code which became effective October 1, 1977. For current law, *see* I.C. 35–48–4–2 (Burns Code Ed. Supp.1980) (delivery), and I.C. 35-41-5 2 (Burns Code Ed.1979) (conspiracy).

3) Whether testimony admitted by the trial court was obtained in violation of Townsend's right to counsel and his right to not incriminate himself;

4) Whether the trial court erred in excluding evidence of possible official hostility towards Townsend; and

5) Whether the trial court erred in prohibiting Townsend from presenting his defense of police misconduct shocking to the community conscience.

The relevant facts are as follows: Townsend was the proprietor of an establishment in West Lafayette known as Brianhouse. Between August of 1976 and February of 1977 Brianhouse was officially visited three times by the West Lafayette police. As a result of the visits, Townsend was charged with possession of alcoholic beverages for a commercial purpose, maintaining a common nuisance, and furnishing alcoholic beverages to a minor. These charges were pending when the events leading to the convictions on review here took place.

Around January of 1977, the Region III Metropolitan Enforcement Group (MEG) began an investigation into drug activities in Tippecanoe County. On three occasions Townsend was acquitted of the charges emanating from two of those meetings. The encounter which resulted in the conviction before us occurred at a pizza parlor on March 17, 1977, when Townsend delivered the Schedule II controlled substance to an undercover agent.

## I.

Prior to trial Townsend formally stated that he would not rely on the defense of entrapment. This election[2] was prompted by a desire on his part to keep from the jury prejudicial evidence of predisposition apparently involving prior drug incidents.

■ Townsend argues that the trial court required him to make an election between asserting an entrapment defense and thereby subjecting himself to the prejudicial ef-

fect of otherwise inadmissible evidence of prior unrelated criminal acts or foregoing the defense in order to keep such predisposition evidence from the jury. In this regard he points to a pretrial order which acknowledged existing law requiring the State to rebut an entrapment defense by evidence of predisposition. To the extent that Townsend argues such acknowledgment forced him to make an unfair election, he is in error. The pretrial order did nothing more than advise Townsend of the law of Indiana. Townsend's argument in this respect is very simply a quarrel with the possible adverse effects of a correct application of the law regarding the defense of entrapment.

Townsend's argument, however, contains another aspect. He asserts that the unfair coercive effect was occasioned by the prospect of the State itself unilaterally raising the entrapment issue in its case-in-chief and then immediately proceeding to rebut the "defense" by the introduction of the prejudicial evidence of prior unrelated criminal acts. He complains that control of his defenses must lie with him and that he should have been permitted to hear the State's case-in-chief before injecting entrapment as an issue.

Our Supreme Court has not directly addressed this issue. The State points to *Gray v. State* (1967) 249 Ind. 629, 231 N.E.2d 793:

"Where the evidence shows, as in this case, that there was a plan devised by law enforcement officers to reveal a violation of the criminal law and such law enforcement officers participate actively in the transaction which is declared to be illegal, without further proof the evidence shows merely that it was the scheme, the idea, and the plan which originated with law enforcement officers. There must be in such instances evidence which will rebut that the illegal transaction was induced solely by the plan of the law enforcement officers, since the burden of proof is on the State and does not shift to the de-

---

**2.** The trial court and the parties referred to this election as a "stipulation", notwithstanding the fact that the State did not agree to it. *See U. S.*

*v. Three Winchester 30–30 Caliber Lever Action Carbines* (7th Cir. 1974) 504 F.2d 1288, 1290.

fendant. The evidence must show that the illegal transaction was actually that of the appellant and not that of the law enforcement officials or informer who was acting at the instigation of the law enforcement officials." 231 N.E.2d at 796.

Although *Gray* could be read to arguably support the State's position, an examination of the case shows that the Court's primary concern was whether entrapment had been rebutted. That concern necessarily presupposes that the defense had been raised. How it was raised, or by whom, was not at issue.

Most Indiana cases are similarly unspecific. In *Hardin v. State* (1976) 265 Ind. 635, 358 N.E.2d 134, our Supreme Court adopted the majority position of *Sorrells v. United States* (1932) 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and foreshadowed the present provision of the new criminal code:[3]

"When the question of entrapment is raised, the court must make a two-part inquiry: (1) Did police officers or their informants initiate and actively participate in the criminal activity; and (2) is there evidence that the accused was predisposed to commit the crime so that the proscribed activity was not solely the idea of the police officials? If the evidence shows police activity absent any showing of predisposition on the part of the accused, entrapment as a matter of law has been established." 358 N.E.2d at 136 (citation omitted).

This language recites the court's duty *when* entrapment is raised, but does not directly address the question of *by whom* it may be raised. *See also Stayton v. State* (1st Dist.1980) Ind.App., 400 N.E.2d 784, 786, 787; *Maynard v. State* (3d Dist.1977) Ind.App., 367 N.E.2d 5, 7. The most recent Supreme Court decision, *Williams v. State*

(1980) Ind., 412 N.E.2d 1211, is also inconclusive. Although it first appears the court recognized that the State can unilaterally raise an entrapment issue, *id.* at 1214–15 (entrapment defense raised by the testimony of the undercover officer), a search of the record reveals that an entrapment instruction was given by the Court without objection. (*Williams* record at 64, final instruction 12.) While it is uncertain if the defendant requested the instruction, the clearly permissible inference supports that position. Alternatively, failure to object to the instruction waived any issue as to entrapment being raised during the trial. In either event, the *Williams* Court did not confront the issue before us.

A recent case from our Court deals directly with this point. In *Silva v. State* (1st Dist.1980) Ind.App., 410 N.E.2d 1342 (transfer pending), the Court addressed the propriety of an instruction concerning the burden of proof when entrapment is raised as an issue. At the conclusion of its analysis, the Court stated:

"In summary, we are of the opinion that the authorities discussed above disclose, relative to the burden of proof in entrapment cases, that the defense of entrapment is inserted into a case, and a prima facie defense of entrapment is made, when probative evidence is presented either by the State or the defendant, whether formally pleaded or not, that a government officer or his agent has solicitated [sic] or has participated in the commission of the charged offense. The only burden of proof on the defendant is to adduce or bring forth some probative evidence of the officer's solicitation or participation if the State has not already done so." 410 N.E.2d 1347.

It is interesting that each of the cases relied upon by the First District for this conclu-

---

**3.** I.C. 35–41–3–9 (Burns Code Ed.1979) provides:

"Entrapment.—(a) It is a defense that:
(1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.
(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

**558**

sion follow the pattern of merely stating that *when* entrapment is an issue the State must then rebut the element of police inducement. *Gray v. State, supra,* 231 N.E.2d 793; *Davila v. State* (3d Dist.1977) Ind. App., 360 N.E.2d 283, 286; *Medvid v. State* (3d Dist.1977) Ind.App., 359 N.E.2d 274, 275. The problem before the Court was whether the State had carried its burden of proof, not how that burden was first imposed.

In contrast to *Silva,* at least implicitly, are *Hardin v. State, supra,* 358 N.E.2d 134, and *Harrington v. State* (2d Dist.1980) Ind. App., 413 N.E.2d 622. As previously noted, *Hardin* did not directly deal with the issue but did favorably note the comments to the then proposed I.C. 35–41–3–9. Those comments contemplate that the burden to raise the entrapment defense lies with the defendant.

"Under this section *the defendant will raise the issue of entrapment* through some evidence showing his conduct was induced by·a public officer or employee and that inducement was of such nature that normal law-abiding citizens would have been persuaded to commit the offense. The burden is then upon the state to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense." Criminal Law Study Commission Comments, I.C. 35–41·· 3–9 (West 1978) (emphasis supplied); *see Hardin v. State, supra,* 358 N.E.2d at 136.

In *Harrington* the Court considered the propriety of an instruction based upon this Comment which required the defendant to present evidence " 'that he was persuaded or induced by a public officer or employee to sell drugs and that such inducement was of such nature that normal law-abiding citizens would have been persuaded' " in order to raise the defense of entrapment. 413 N.E.2d at 624. Although we rejected that portion of the instruction relating to the degree in which police inducement must be established, we clearly embraced the principle that the defendant, in some way, must first raise the defense:

"If the defendant establishes police inducement, whether by direct involvement of officers or by participation of ·paid informants, and the State fails to prove predisposition, the defendant is entitled to an acquittal.

. . . .

Furthermore, if a defendant has not raised the issue of entrapment, he is not entitled to an instruction on that defense." 413 N.E.2d at 625.

*See also, Williams v. State* (1980) Ind., 409 N.E.2d 571, 573- 74 ("When the accused raises this defense . . . ."); *Kramer v. State* (1st Dist.1974) 161 Ind.App. 619, 625–26, 317 N.E.2d 203, 208 ("Once the defendant has raised the defense of entrapment . . .").

*Johnson v. State* (1971) 255 Ind. 589, 266 N.E.2d 57, also supports the position that the defendant must raise the entrapment defense. In *Johnson* the Court characterized entrapment as "an affirmative or positive defense, and one that defendant must prove." 266 N.E.2d at 60. At the same time we are cognizant of the rule followed in this State that entrapment need not be affirmatively pleaded. Reconciling these two apparently conflicting stances, and summarizing the case law on this issue, we conclude that although the defendant need not raise an entrapment issue before trial, he must indicate, at some point in the proceedings, his intention to rely upon the defense. The defendant's "affirmative burden" is met by establishing police inducement. Only at this point, after the defendant has established police inducement and has indicated an intention to rely on entrapment, is the burden of showing predisposition imposed upon the State. In *Harrington v. State, supra,* the evidence of inducement was presented on direct examination of the State's witnesses, and the defendant's intentions were revealed on cross examination. 413 N.E.2d at 624. The indicia of entrapment can thus be demonstrated by the State unilaterally, but entrapment cannot rise to the level of an issue, requiring rebuttal by the State, until the defendant makes it an issue.[4]

4. This appears to be the position of the majority of jurisdictions which have considered the

issue. *See* Annot., 61 A.L.R.3d 293, 306–309 (1975 & Supp.1980).

The position advanced in *Silva v. State, supra,* that the State must rebut entrapment every time police inducement is shown by its evidence even though, as here, the defendant made it clear he was not relying on the defense, is highly problematic. From the defendant's viewpoint, it could be used to effectively wrest control of the defense away from the defendant and his counsel. A minimal showing of inducement could be followed by highly prejudicial and otherwise irrelevant character evidence to prove predisposition. From the State's viewpoint, it is unnecessarily encumbered with a premature burden.[5]

■ We therefore opine that the defendant must in some manner affirmatively raise the defense of entrapment before rebuttal by the State is either necessary or desired.[6]

■ In the present instance, however, we are unable to find reversible error in the relinquishment of the possible entrapment defense no matter that Townsend did so earlier in the judicial process than necessary. Townsend's argument presupposes the existence of predisposition evidence sufficient to rebut the entrapment defense had he asserted it. Conversely, abandonment of the defense, whether premature or not, could result in reversal only if otherwise inadmissible predisposition evidence had been admitted over his objection. Townsend does not indicate to us any testimony or other evidence admitted of record which dealt with prior unrelated drug offenses committed by him.

5. Given the current posture of the law the defendant can probably raise the entrapment defense at any time before the close of all the evidence. If it were within our prerogative to establish such requirements, however, we would neither permit the defendant an entrapment instruction nor place any duty or right on the State, unless the defendant specifically discloses his intent to rely upon the defense before the State closes its case-in-chief.

6. Evidence of predisposition which is otherwise relevant, such as events surrounding the offense charged, would of course still be admissible.

## II.

■ Townsend next alleges that the trial court erred in giving final instruction number 41 which provided:

"If the defendant is found guilty under more than one count of the information, any sentences of imprisonment which may be imposed will run concurrently and non consecutively. In other words, all of the sentences commence to run at the same time. He does not finish one sentence and then start serving the next one.

However, any fines which may be imposed under different counts are cumulative, that is to say, they are added together and the defendant must pay the total amount." (R. 363.)

Townsend relies heavily upon *Feggins v. State* (1977) 265 Ind. 674, 359 N.E.2d 517. In *Feggins* the subject of parole was brought up by a prospective juror during voir dire, and the court gave an explanatory instruction over the defendant's objection. Overruling *Watts v. State* (1949) 226 Ind. 655, 82 N.E.2d 846, *rev'd on other grounds,* 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, the court held it was error to instruct that a convicted defendant would serve a lesser sentence than that prescribed by the jury.[7] 359 N.E.2d at 524. The rationale behind this holding was that a jury, aware of factors which could reduce a defendant's sentence, might compromise their verdict or adjust the penalty in order to impose a punishment they consider appropriate. *Id.* See also *Debose v. State* (1979) Ind., 389 N.E.2d 272, 273–74.

7. We note that it would clearly be error to give such an instruction today since the trial court now has sole sentencing authority. I.C. 35–50–1–1 (Burns Code Ed.1979); *Debose v. State* (1979) Ind., 389 N.E.2d 272, *Inman v. State* (1979) Ind., 393 N.E.2d 767, 769. Townsend was convicted of crimes which took place before the new code became effective, however, and was properly sentenced under old law. *Haskett v. State* (1979) Ind., 395 N.E.2d 229; *see Rihl v. State* (2d Dist.1980) Ind.App., 413 N.E.2d 1046, 1054.

Townsend also cites *Wilson v. State* (1st Dist.1976) 169 Ind.App. 33, 346 N.E.2d 279, which held that it was error to instruct the jury on matters relating to the penalty when punishment was not to be fixed by the jury. The trial court's error occurred when it instructed the jury to consider the fact that the defendant's ultimate sentence would be reduced by the amount of time already served. The Court of Appeals found that this instruction incorrectly required the jury to consider the penalty as relevant evidence of guilt or innocence. 346 N.E.2d at 281; *see Rowe v. State* (1968) 250 Ind. 547, 237 N.E.2d 576.

Our primary concern is whether Townsend was prejudiced by final instruction number 41. *See Wilson v. State*, 346 N.E.2d at 281. Townsend was charged in a five count information. Of the five counts, four required the jury to fix the penalty at between five and twenty years, while the fifth, the conspiracy charge, carried an indeterminate sentence of not less than two nor more than fourteen years. After a guilty verdict on only one of the four delivery charges, the jury fixed the penalty at seven years with no fine. The jury also added a sixty dollar fine to the indeterminate sentence accompanying the conspiracy charge. Because the jury had the responsibility of fixing the penalty for the delivery charges the *per se* proscription of *Wilson* is inapplicable. Although *Feggins v. State*, *supra*, 359 N.E.2d 517, demonstrates that prejudicial error can result even when the jury fixes the penalty, we think that Townsend has failed to show that he was harmed by the alleged error complained of. *See Hester v. State* (1974) 262 Ind. 284, 315 N.E.2d 351.

Townsend's position appears to be that the jury compromised in its verdict to reach a certain number of years of imprisonment. The record, however, shows that the jury carried out its duties in a highly conscientious manner. Twice after retiring it asked the judge for additional assistance. The first time the jury requested additional information on the booths at a pizza parlor. On the second contact, the jury was puzzled by the lack of a space on the verdict form to indicate the sentence for the conspiracy charge. In response to this inquiry, the court read instruction number 51:

"You have addressed the following question in writing to the court:

'We have found that there is no blank included in the Count V conspiracy verdict paper to indicate the number of years selected for sentence, please send instructions.'

If the jury finds the defendant guilty of the crime of conspiracy to commit a felony, the jury does not have the duty of fixing the term of his imprisonment. The sentence of imprisonment imposed under a conviction of conspiracy is what is known as an indeterminate sentence, which means that the department of corrections and not the court determines the exact length of the sentence.

Therefore, if you find the defendant guilty of conspiracy to commit a felony, you are not concerned with the length of the sentence that he should receive. However, you would still have the duty of fixing the amount of the fine at a figure *not less than twenty-five dollars nor more than five thousand dollars.*" (R. 399.)

Also pertinent here is final instruction number 47, given without objection, which addresses the jury's duty of fixing the penalty on the delivery charges:

"As I have instructed you, if you find the defendant guilty of any of the offenses charged or included in any of the first four counts, you have the duty of *fixing the penalty for the offense within the limits fixed by the statute defining the crime.*

If it becomes necessary for you to carry out this duty, you should consider the nature and circumstances of the offense or offenses committed, and attempt to fix a penalty within the statutory limits which is proportionate to the nature and circumstances of such offense or offenses." (R. 369.)

These two instructions, taken in conjunction with the knowledge that Townsend was acquitted on three of the four delivery

charges, received only seven years out of a possible twenty on the fourth, and was only lightly fined on the conspiracy charge, militate against reversal here. Although Townsend claims the seven year sentence indicates compromise because it is more than the minimum and less that the maximum, the most likely explanation for the term is that the jury simply adjusted the sentence as directed by final instruction 47. We find no prejudice requiring reversal for a new trial.

### III.

■ Townsend next contends that the trial court erred in admitting the testimony of those involved in the events giving rise to his convictions. Relying on *Massiah v. United States* (1964) 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, he argues that because he was represented by counsel for the Brianhouse charges at the time he was under investigation by the MEG, failing to suppress the testimony amounted to a deprivation of his right to counsel and his right against self-incrimination.

The Third District was presented with the same problem in *Lee v. State* (3d Dist. 1977) Ind.App., 369 N.E.2d 1083. In affirming the defendant's conviction the court explained the limitations of a *Massiah* objection:

> "[Lee] argues first that his rights were violated under the holding in *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. In *Massiah*, after the defendant had been indicted, a co-actor agreed to cooperate with officials by securing incriminating remarks through a transmitter installed in his car. The court found such evidence inadmissible holding that police officials could not eavesdrop to secure incriminating statements from a suspect who had already been indicted without first advising him of his constitutional rights.
>
> However, in *United States v. Osser* (3d Cir. 1973), 483 F.2d 727, the court emphasized the fact that *Messiah* [sic] applies only where a defendant's post-indictment statements were solicited by police and

were used to prove the offenses for which he had originally been indicted." 369 N.E.2d at 1085.

*See also Jackson v. State* (1978) 268 Ind. 360, 375 N.E.2d 223.

Since the testimony admitted at trial did not pertain to the Brianhouse charges, we find no merit in Townsend's argument on this issue.

### IV.

Townsend's fourth argument is that the trial court erred in granting the portion of the State's motion *in limine* which requested that no mention of the Brianhouse charges or proceedings be allowed at trial. He argues that he was the object of a "concerted campaign by West Lafayette City Police and other police agencies" and therefore the Brianhouse events were relevant to show bias or hostility on cross-examination.

■ A trial court has inherent discretionary power to control the admission of evidence and to grant or deny motions *in limine*. *Lagenour v. State* (1978) 268 Ind. 441, 376 N.E.2d 475, 479. This power, however, cannot be used to deny the defendant his right to effective cross-examination, such as by precluding inquiry into an adverse witness's bias or hostility. *See Davis v. Alaska* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347; *Lagenour v. State, supra,* 376 N.E.2d at 478, 479; *Haeger v. State* (4th Dist.1979) Ind.App., 390 N.E.2d 239, 240. Although the defendant need not make an offer to prove in such cases, he must demonstrate an actual infringement upon cross-examination. *Lagenour v. State*, 376 N.E.2d at 479.

Two recent cases have dealt with the problem. In *Haeger v. State, supra,* the trial court sustained the State's objection to questioning the arresting officer on cross-examination as to whether he was under pressure to make a certain quota of arrests. 390 N.E.2d at 240. The Fourth District, in reversing the trial court, noted that the defendant met the actual infringement requirement in arguing, "that pressure to

make arrests might result in overzealousness on the part of the arresting officer and that '[once] having made an arrest, he does not want to be made to look foolish by having the party acquitted.'" *Id.* Similarly, in *Meeker v. State* (1st Dist.1979) Ind. App., 395 N.E.2d 301, the court noted that it was permissible for the defendant to question the arresting officer as to *previous encounters between the two. Id.* at 305.

Here, in contrast to *Haeger,* Townsend did not seek to inquire about pressure on the arresting officers to reach a quota of arrests. Rather, he apparently sought to pursue matters, the Brianhouse charges, in which the arresting officers took no part. The Brianhouse arrests were made by the West Lafayette police while the arresting officers on the delivery and conspiracy charges were MEG agents from Kokomo and Bartholomew County. Further, in contrast to *Meeker,* Townsend could not inquire about previous contacts between him and the MEG agents because such contacts did not exist. We also find no merit in Townsend's argument that he was the specific "target" of police activities from Brianhouse through the delivery and conspiracy arrests. The record shows that at least fifty other persons were arrested with Townsend at the close of the MEG investigation.

Under the circumstances of this case Townsend has failed to demonstrate an actual infringement of his right to cross-examination, for he has not adequately shown how the Brianhouse events impinged the objectivity of the witnesses. *See Lagenour v. State, supra,* 376 N.E.2d at 479. Accordingly, the trial court did not abuse its discretion in granting the State's motion *in limine.*

## V.

Townsend's last contention is that the trial court erred in preventing him from presenting to the jury his defense of police misconduct shocking to the community conscience. The defense is based upon the activities, condoned and supported by the MEG agents, which took place at the mobile home occupied by a paid undercover operative.[8] Among the activities held at the trailer were parties where drug and alcohol use and drug transactions were common elements. Many of the guests at these parties were minors. Townsend claims that the question of whether this conduct was shocking to the community conscience should have been determined by the jury.

The fatal defect in Townsend's argument, as a matter of law, is apparent upon a cursory examination of the primary authorities he relies upon. In each case the shocking police misconduct gave rise to the defendant's arrest. *Hampton v. United States* (1976) 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113; *United States v. Russell* (1973) 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366; *United States v. Twigg* (3d Cir. 1978) 588 F.2d 373. As stated in *Twigg* the community conscience defense is founded on the principle that "fundamental fairness will not permit any defendant to be convicted of a crime *in which* police conduct was 'outrageous.'" *Id.* at 379 (emphasis supplied). Here, the allegedly shocking events which took place in the trailer were unconnected to the events in the pizza parlor for which Townsend was convicted. We find that the trial court did not err in preventing him from presenting this defense at trial.

Judgment affirmed.

SHIELDS, J., concurs.

BUCHANAN, C. J., concurs in result.

---

8. Townsend briefed a sixth issue which the trial court euphemistically termed imaginative. Townsend argued that since the trailer operated by the undercover agent was a common nuisance, even though it was never judicially declared to be one, all of the fruits of the investigation developed out of the trailer's use should be suppressed. We need not devote greater consideration here for two reasons. First, this argument is basically the same as that presented in part V and has the same shortcomings. Second, Townsend has cited no pertinent authority to support this particular contention and the issue, if any, is deemed waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).