Regina **GAINES, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

No. 4–783A234.

Court of Appeals of Indiana, Fourth District.

Dec. 12, 1983.

Thomas D. Ryan, East Chicago, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Ind., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Presiding Judge.

Regina Gaines (Gaines) appeals her conviction by a jury of dealing in a Schedule II controlled substance, cocaine. Ind.Code 35–48–4–1, 35–48–2–6(b)(4).

We affirm.

ISSUE

This appeal presents a single issue for review: Whether the trial court erred in refusing to declare a mistrial.

FACTS

Working under cover, Officer Candiano (Candiano) became acquainted with Gaines. On February 16, 1982, Candiano accompanied Gaines to her uncle's home. There Candiano and Gaines visited a friend of Gaines, who sold Candiano a small amount of cocaine.

Immediately prior to trial, the court granted Gaines's motion in limine to exclude evidence of all other purchases of drugs other than the ones alleged February 16.

During the State's direct examination, Candiano stated he and Gaines previously had made other purchases. Gaines moved for a mistrial, which was denied.

Later, in argument over an objection during the State's cross-examination of Gaines, the prosecutor stated he was attempting to show her entire family was involved with selling drugs. Defense counsel again moved for a mistrial, which was denied.

The colloquies which resulted in these objections are set out during the discussion below.

DISCUSSION AND DECISION

I.

During the State's examination of Candiano, the following exchange occurred:

Q What were the plans formulated?

A That he would follow me, that when I met her [Gaines] we would probably go get some coke because we had done it in the past.

Q And you—

BY MR. JABLONSKI: I'm going to make an objection at this point, Your Honor, for the reason that that answer is in violation of the Court's Motion in Limine and is suggestive of other crimes not at bar, and I move for a mistrial on that basis.

Gaines raises several interrelated contentions, each saying in substance the trial court should have declared a mistrial because the officer stated he and Gaines "would probably go get some coke because we had done it in the past." Although Gaines's brief is not entirely clear, we read it as claiming the statement violated the trial court's order in limine, its prejudicial effect outweighed its probative value, and the prosecutor committed misconduct by not advising the witness of the order in limine.

### A. Violation of Order in Limine

■ We note initially the granting or denial of a mistrial is a matter within the sound discretion of the trial court, and this court will reverse only where there is clear error in the trial court's ruling. *See, Brown v. State,* (1981) Ind., 417 N.E.2d 333, 338. Moreover, admission of evidence also is generally committed to the sound discretion of the trial court. We will reverse only upon a showing such discretion has been manifestly abused, and the complaining party has been denied a fair trial. *See, Napier v. State,* (1983) Ind., 445 N.E.2d 1361, 1364.

The question of whether the trial court can admit evidence barred by its prior order in limine is one of first impression in this state. Motions in limine first were explicitly recognized by our courts in *Burrus v. Silhavy,* (1973) 155 Ind.App. 558, 293 N.E.2d 794, 63 A.L.R.3d 304. Judge Staton pointed out the authority of the trial court to entertain a motion in limine "emanates from the inherent power of the trial court to exclude or admit evidence in the furtherance of its fundamental constitutional purpose which is the administration of justice." *Id.,* 155 Ind.App. at 563, 293 N.E.2d at 797, 63 A.L.R.3d at 308.

■ Thus, enforcement of an order in limine is a matter for the trial court's discretion, stemming from its authority to control the admission of evidence. As Justice DeBruler said,

> ... it is not the office of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence as was sought by appellant, but is rather to pre-

vent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility *in the context of the trial itself.* (Citations omitted and concluding emphasis supplied.)

*Lagenour v. State,* (1978) 268 Ind. 441, 450, 376 N.E.2d 475, 481.

■ Therefore, no error results from a trial court's admission of evidence in violation of its order in limine if the evidence is otherwise admissible in the context of the particular trial. For reasons discussed in section B, *infra,* the evidence was admissible.

■ However, in cases where a particular witness's testimony may encroach an order in limine, the better practice is to proceed through the sensitive part of the testimony outside the presence of the jury. Orders in limine serve to prevent error and expedite litigation. Moreover, deliberate violations of orders in limine by counsel to introduce evidence which prejudices opposing parties may be grounds for a mistrial. Nevertheless, where the failure to enforce orders in limine does not result in the erroneous admission of evidence, there is no reversible error.

### B. Admissibility

Gaines also argues a mistrial should have been declared because the officer's statement introduced irrelevant, highly prejudicial evidence. We disagree.

■ Initially, however, we disagree with the State's reliance on *Townsend v. State,* (1980) Ind.App., 418 N.E.2d 554 *cert. den.* (1982) 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853. Even though Gaines had not yet raised the defense of entrapment, the State argues *Townsend* supports admission of the officer's testimony on the basis Gaines subsequently did raise the entrapment defense. A close reading of *Townsend,* however, does not support this position.

*Townsend* involved appeals from delivery of a controlled substance and conspiracy. The trial court issued a pre-trial order stating the State would have to rebut evidence of entrapment by showing predisposition. The State apparently presented predisposition evidence in its case-in-chief, after Townsend formally stated he would not rely on the defense of entrapment.

This court held reversible error only would occur "if *otherwise* inadmissible predisposition evidence had been admitted over [the defendant's] objection." *Id.,* 418 N.E.2d at 559 (emphasis supplied). In regard to the State prematurely presenting evidence on entrapment in its case in chief, Judge Sullivan wrote:

> The position advanced . . . that the State must rebut entrapment every time police inducement is shown by its evidence even though, as here, the defendant made it clear he was not relying on the defense, is highly problematic. From the defendant's viewpoint, it could be used to effectively wrest control of the defense away from the defendant and his counsel. A minimal showing of inducement could be followed by highly prejudicial and otherwise irrelevant character evidence to prove predisposition. From the State's viewpoint, it is unnecessarily encumbered with a premature burden.

> We therefore opine that the defendant must in some manner affirmatively raise the defense of entrapment before rebuttal by the State is either necessary or desired.[6] (Citations and footnote 5 omitted.)

---

6. Evidence of predisposition which is *otherwise relevant,* such as events surrounding the offense charged, would of course still be admissible. (Emphasis supplied.)

*Id.,* at 559, and n. 6.

Accordingly, *Townsend* does not support the State's argument evidence of prior acts improperly admitted during the State's case-in-chief subsequently is validated if an entrapment defense is raised. However, as *Townsend* noted and as the trial court below correctly interpreted *Townsend's* language in this case, the evidence was admissible on other grounds.

■ The officer's testimony was admissible to show Gaines's common scheme or plan to sell drugs to the officer. Our supreme court faced a similar issue in *Downer v. State,* (1982) Ind., 429 N.E.2d 953, 955, and stated

> [T]he general rule is evidence of prior crimes committed by a defendant, separate and distinct from the one he is charged with committing, is inadmissible to prove commission of the present crime. Appellant concedes it is well established such evidence is admissible where it tends to prove intent, motive, purpose, identification, or common scheme or plan. *Howell v. State,* (1980) Ind., 413 N.E.2d 225; *Henderson v. State,* (1980) Ind., 403 N.E.2d 1088. This Court has held admission of evidence of a defendant's prior drug dealings to show a common scheme or plan to engage in drug peddling is proper. *Manuel v. State,* (1977) 267 Ind. 436, 370 N.E.2d 904. *See also, Haynes v. State,* (1980) Ind.App., 411 N.E.2d 659; *Perry v. State,* (1980) Ind.App., 393 N.E.2d 204.

The record demonstrated Gaines was involved in several cocaine sales with Officer Candiano during the period of about 30 days. This evidence was not so remote in time or circumstances as to be irrelevant and therefore unduly prejudicial. The trial court properly refused to declare a mistrial.

This district's recent decision in *Gaston v. State,* (1983) Ind.App., 451 N.E.2d 360 (trans. pending), is distinguishable. In that case we found evidence of prior *use* of cocaine lacked sufficient similarity to the charged crime of dealing in cocaine. Although there was some evidence of prior dealing, it was not substantiated. *Id.,* 451 N.E.2d at 362–65. In this case, by contrast, Gaines was involved in several sales to the same officer during a period of about 30 days. As we noted in *Gaston,* "this is a fact sensitive issue which in the past has apparently been resolved on a case by case basis." *Id.,* 451 N.E.2d at 365, n. 3. There was sufficient similarity between the prior acts

and crime charged in this case. Gaines was not entitled to a mistrial.

### C. Prosecutorial Misconduct

■ Gaines generally contends the prosecutor committed misconduct by failing to advise Candiano of the order in limine. We disagree.

We review allegations of prosecutorial misconduct through a four-part test articulated by our supreme court in *Maldonado v. State*, (1976) 265 Ind. 492, 498–99, 355 N.E.2d 843, 848:

1. Did the prosecutor engage in misconduct;

2. If so, was the defendant placed thereby in a position of grave peril to which she should not have been subjected;

3. Whether grave peril results is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct;

4. Although an isolated incident of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result.

Assuming for the sake of argument the prosecutor's failure to prepare the officer by advising him of the order in limine was misconduct, Gaines was not placed in a position of grave peril to which she should not have been subjected. The officer's testimony was admissible to show Gaines's series of transactions culminating in the crime charged.

### II.

■ Gaines argues a mistrial should have been declared because of a statement by the prosecutor during his cross-examination of Gaines. After she raised the entrapment defense, the following colloquy occurred:

Q Your residence at 640, who lived there?

A My mother and father and sister and brother.

Q Who lives at 1018 Garfield?

A My uncle and cousin.

Q Who's your uncle?

A Johnny Gaines.

Q Who is the cousin?

A Kevin Gaines.

Q Is there a member of your family named Bird?

A My cousin.

Q Kevin?

A No, Johnny's other son.

Q Does he live there or in St. Louis?

A He stayed there but he don't stay there anymore.

Q In fact, he lives in St. Louis and comes up occasionally?

A Yes.

Q Does Bird deal drugs?

A No.

BY MR. JABLONSKI: Objection, Your Honor, if he is trying to—number one, it's outside the scope of direct examination.

BY THE COURT: I think that's sufficient. I think cross would have to have a pretty broad range, but I don't think it was that deep in the family.

BY MR. JABLONSKI: It's ridiculous.

BY MR. WOLF: If it pleases the Court, I'm seeking to show—in direct examination the suggestion was made that Regina did not ordinarily do this or engage in it, and I intend to show the entire family is engaged—

BY MR. JABLONSKI: What a horrible remark to make on an objection that has been made. The remark that he made in front of the jury was prejudiced, yet he wishes to tell the jury that the whole family is involved in drugs. Beautiful job, Mr. Wolf. I move for a mistrial.

BY THE COURT: As I am reading here, the nature of the entrapment defense in Indiana, I understand—

BY MR. JABLONSKI: He did not show predisposition by what family member because—

BY THE COURT: It may have some probative value to show that. The law

requires that we address this objective intent of the defendant, so it may have some probative value. Do you have any reasonable grounds for these questions or are you just fishing around?

BY MR. WOLF: She went to her uncle's house to obtain cocaine.

BY THE COURT: I'll let the answer stand.

BY MR. JABLONSKI: I have a motion before the Court.

BY THE COURT: Denied.

BY MR. WOLF:

Q Let me ask you this—I apologize to the Court, but Mr. Jablonski began—

BY THE COURT: No need, Mr. Wolf.

BY MR. WOLF:

Q Miss Gaines, the 16th of February, 1982, did you go to your uncle's house with Tom Candiano to get cocaine?

A I can't recall the date, but I did go over there.

Q To get cocaine?

A Yes.

Q Is it fair to say that somebody at your uncle's house was in possession with, or deals cocaine, to your knowledge?

A Yes.

Q Who would that be?

A A person called Head.

Q Just called Head; your uncle was not involved?

A No.

Q Yet he let his house be used for a cocaine headquarters?

A I don't think he knew.

Q You don't think he knew?

A He was a renter, he rented a room.

Q I see, and other people lived—

A No, no one besides my cousin and his father and the man Head.

Q Head rented a room from your uncle?

A Right.

Gaines contends the prosecutor's remark he was trying to show "the entire family is engaged" constituted prosecutorial misconduct. We agree the remark should not have been made, but also hold a mistrial properly was not declared.

The remark provided great potential for prejudicing the jury, and could have placed Gaines in a position of grave peril. However, as cross-examination continued Gaines was able to deny other family members were involved, and to state her uncle was not aware a tenant was dealing at her uncle's house. Gaines has not cited us to any other reference to her family by the prosecutor.

Accordingly, although the prosecutor's remark should not have been made, it cannot be said "to have had such persuasive effect that a new trial is warranted." *Remsen v. State*, (1981) Ind., 428 N.E.2d 241, 245.

Judgment affirmed.

MILLER and YOUNG, JJ., concur.