**Aaron D. KEARNEY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 96–CM–1256.

District of Columbia Court of Appeals.

Argued Feb. 25, 1998.
Decided March 19, 1998.

Derick P. Berlage, Washington, DC, appointed by the court, for appellant.

Pamela S. Satterfield, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

Aaron D. Kearney was convicted at a bench trial of simple assault, in violation of D.C.Code § 22–504(a) (1996). On appeal, he contends that he was denied a fair trial because, according to Kearney, the trial judge prevented Kearney's attorney from presenting a closing argument. We affirm.

## I.

In the early morning hours of July 5, 1996, Kearney and a female friend, Phouthavone (Pat) Sayasithsena, were at "The Sports Fan," a club located in the Georgetown section of northwest Washington, D.C. At the bar, Ms. Sayasithsena struck up a conversation with an unidentified young man in a white shirt whom Kearney described as "cool." When closing time approached, Kearney, Ms. Sayasithsena and the white-shirted man walked out of the club together. Suddenly, Ms. Sayasithsena's new acquaintance began to urinate directly in front of the service entrance of The Sports Fan.

Kevin Dyels, a sign-language interpreter by day and a disc jockey at the club by night, saw the "gentleman peeing on the glass door to the exit." Dyels testified that he told the man that he should use the bathroom downstairs, and not "the bathroom ... on the street." The two men exchanged uncompli-

mentary four-letter epithets. Dyels then walked away, together with his girlfriend, Ellen Sufranic, and another female friend. It appears to be undisputed that, after having relieved himself, the white-shirted man followed Dyels and assaulted him.

The parties' accounts diverge as to Kearney's role in these events. According to the prosecution witnesses, Kearney participated on the urinator's side in the exchange of insults with Dyels, and he then helped the man to beat up Dyels. In fact, Ms. Sufranic claimed that Kearney threw the first punch. Kearney testified, on the other hand, that he suspected that the white-shirted man might attack Dyels, that he remarked, "I got to stop him," and that he then followed the white-shirted man in order to *prevent* him from assaulting Dyels. Kearney claimed that he was trying to separate Dyels and Dyels' assailant when the police arrived and arrested Kearney. Ms. Sayasithsena did not see the fight, but she confirmed that Kearney had declared his intention to "stop" the white-shirted man from attacking Dyels.

At the conclusion of the case for the prosecution, Kearney's attorney made an oral motion for judgment of acquittal (MJOA), and she presented a brief argument in support of her motion. The judge denied the motion. Defense counsel renewed her MJOA at the conclusion of the defense case, and the judge again denied it. The prosecutor announced that he had no rebuttal witnesses. The judge then stated:

> All right. That being the case, the court is going to—we're going to stand in brief recess so that the court can consider the evidence, and then I will come back and render my decision. I don't think closing arguments will be necessary; the evidence is fairly clear, and the question is one of credibility. All righty?
>
> All right, then we will stand in brief recess, probably about five minutes.

Neither attorney responded to the question "All righty?", and the judge took a brief recess. A few minutes later, the judge resumed the bench and delivered his oral decision. The judge stated that he credited the

prosecution witnesses and that he did not believe some of the defense testimony. The judge found Kearney guilty of simple assault. This appeal followed.

## II.

 Kearney had the right, under the Constitution and under the Superior Court's rules, to present a closing argument through counsel. *Herring v. New York,* 422 U.S. 853, 856–65, 95 S.Ct. 2550, 2552–57, 45 L.Ed.2d 593 (1975); *Thomas v. District of Columbia,* 67 App. D.C. 179, 183, 90 F.2d 424, 428 (1937); Super. Ct.Crim. R. 29.1. This is an important right, and it applies in full force even to relatively uncomplicated cases such as this one, in which the result turned on the judge's assessment of the credibility of the witnesses.[1] Justice Stewart, writing for the Court in *Herring,* explained the function served by closing argument:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. (Citation omitted.)
>
> The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

422 U.S. at 862, 95 S.Ct. at 2555.

 The government does not challenge the defendant's right to present a closing

---

1. To the extent that the trial judge may have believed that closing argument can readily be dispensed with in brief trials to the bench, see p.

3, *supra,* we do not agree with such an assessment.

argument, but contends that Kearney was not denied that right. On this record, we are constrained to agree. At the close of the evidence, after indicating his readiness to proceed to decision without hearing closing argument, the judge explicitly asked counsel "All righty?". The obvious purpose of this inquiry was to determine whether either party had any objection to the judge's proceeding in this manner. When both the prosecutor and Kearney's attorney remained silent, the judge could reasonably infer that there was no objection.

The judge then took a brief recess. Kearney's attorney thus had ample opportunity to consult with her client and to make a reasoned determination as to whether oral argument would be to her advantage. When the judge resumed the bench, however, counsel once again remained silent.[2]

■ The Supreme Court has explicitly recognized that the right to make closing argument may be waived. *Herring, supra,* 422 U.S. at 860, 95 S.Ct. at 2554 (citing *Yopps v. State,* 228 Md. 204, 178 A.2d 879, 881 (1962)). In *United States v. Martinez,* 974 F.2d 589 (5th Cir.1992), the court held, on facts similar to those presented here, that the defendant had waived the right. The court's reasoning in *Martinez* is instructive.

The defendant in *Martinez* was charged with four serious narcotics felonies. She waived her right to a jury, and opted instead for a bench trial. At the close of the evidence, the trial judge took a brief recess. Prior to the recess, the judge said nothing regarding closing argument. Upon returning to the courtroom, the judge informed counsel that he was prepared to rule and that he did not consider closing argument necessary. Defense counsel did not request an opportunity to present closing argument, nor did he otherwise object to the judge's suggestion. The judge then found the defendant

guilty of two of the four counts of the indictment.

The appellate court affirmed the conviction. The court recognized that, under *Herring* and Fed.R.Crim.P. 29.1, the defendant had the right to present closing argument. The court held, however, that this right could be waived, and that an affirmative waiver on the record is not required. *Id.* at 591 n. 7 (citations omitted). The court stated that "the critical factor in deciding whether the silence of counsel constitutes a waiver is whether there was a meaningful opportunity for counsel to request argument or to object, considering all the attendant circumstances." *Id.* at 591–92 (footnote omitted). The court continued:

> While we . . . share the view that a waiver will not be implied where there is no meaningful opportunity to object to a lack of closing argument, we do not find that to be the factual situation in the case at bar. The court *a quo* did not announce its ruling immediately after the close of the evidence; it called for a recess at that point. During the recess, counsel had an opportunity to gather his thoughts and, at the very least, determine his course on closing argument. In response to the judge's "argument not needed" announcement upon returning to the bench at the conclusion of the recess, the defendant could not stand silent and "take her chances" yet simultaneously preserve all rights for appeal as if she had timely objected and given the trial court a reasonable opportunity to address any real or imagined error. It would have been preferable if the court had called upon both counsel to state for the record any objections to the court proceeding to judgment without closing argument, or to formally waive same on the record, and in the future we trust we shall universally find that practice, but in the instant case, under the facts as presented, we are persuaded that a waiver occurred.

*Id.* at 592.

■ In the present case, Kearney was afforded a more meaningful opportunity to re-

**2.** Kearney's appellate attorney argues that a request by trial counsel after the recess for an opportunity to present closing argument would have been futile because, according to appellate counsel, the judge had already made up his

mind. We are not prepared to assume that the judge, who had previously asked "All righty?", would have refused to entertain closing argument, or that the judge's mind would have been closed to the merits of such argument.

quest oral argument than the defendant in *Martinez* had. The judge made a specific, albeit brief, inquiry as to whether the "no oral argument" procedure was satisfactory to counsel. The judge thus invited a response that it was not "all righty." Moreover, Kearney's attorney knew of the judge's contemplated procedure during the five-minute recess that followed. In *Martinez*, on the other hand, the judge did not disclose his plans until *after* the recess, so that counsel had only a brief opportunity to object. In our view, this case is therefore a stronger one for the prosecution than *Martinez* was, and we sustain Kearney's conviction on the authority and persuasive reasoning of *Martinez*.

*Affirmed.*[3]

---

**3.** Kearney contends that it was plain error for the court to dispense with oral argument even in the absence of an objection from counsel. In our view, however, Kearney has not demonstrated that the judge's action was "plainly" or "obviously" wrong, inasmuch as the right to oral argument may be waived by silence, nor has he shown that the decision of the case without oral argument resulted in a miscarriage of justice. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993); *Martinez, supra,* 974 F.2d at 590–92.

Kearney also asserts, in the alternative, that his trial counsel was constitutionally ineffective by failing to insist on closing argument. Because neither the prosecutor nor defense counsel pre-

sented oral argument, however, it is not apparent that the court's procedure was more advantageous to the prosecution than to the defense. Counsel's performance in failing to object to an even-handed procedure was not constitutionally deficient, and Kearney has not made the required showing of prejudice. *See Strickland v. Washington,* 466 U.S. 668, 687–89, 104 S.Ct. 2052[, 2064–65], 80 L.Ed.2d 674 (1984).

