132 P.3d 852

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Frederick Ryan HEBERT,
Defendant–Appellant.**

**No. 25754.**

Intermediate Court of Appeals of Hawai'i.

Feb. 28, 2006.

Certiorari Denied April 7, 2006.

Paul J. Cunney, R. Patrick McPherson, and Victor J. Bakke (Paul J. Cunney, a Law Corporation), on the briefs, for defendant-appellant.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court By WATANABE, J.

Defendant–Appellant Frederick Ryan Hebert (Hebert or Mr. Hebert) appeals from the judgments entered by the District Court of the First Circuit [1] (the district court or the court) on March 19, 2003, following a bench trial, convicting and sentencing him for operating a vehicle under the influence of an intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E–61(a)(1) (Supp.2004),[2] and disregarding a red signal, in violation of HRS § 291C–32(a)(3)(A) (1993).[3]

---

1. The Honorable Hilary Benson Gangnes presided.

2. Hawaii Revised Statutes (HRS) § 291E–61(a)(1) (Supp.2004) reads now, as it did when Defendant–Appellant Frederick Ryan Hebert was charged with violating said statute, as follows:

**Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

3. HRS § 291C–32(a)(3)(A) (1993) provides as follows:

**Traffic-control signal legend.** (a) Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red, and yellow shall be used, except for special pedestrian signals carrying a word or symbol legend, and the lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
. . . .

Hebert's sole contention on appeal is that the district court erred as a matter of law when it failed to give his trial counsel an opportunity to make a closing argument following the presentation of evidence. Based on our review of the record and the relevant case law, we conclude that Hebert waived closing argument, and, accordingly, we affirm the judgments entered below.

## BACKGROUND

The transcripts of Hebert's trial, held on March 11 and 19, 2003, indicate that at about 10:28 p.m. on November 10, 2002, Honolulu police officers Wade Nakagawa (Officer Nakagawa) and Darren Nihei (Officer Nihei) were patrolling in separate cars along North Nimitz Highway when each observed a vehicle make a left turn through a red light at the intersection of Nimitz Highway and Waiakamilo Road and proceed mauka[4] on Waiakamilo Road. Officer Nakagawa turned on his siren, activated the blue light atop his car, and pursued the vehicle, which stopped about one hundred to one hundred fifty feet from North Nimitz Highway on the right shoulder of Waiakamilo Road.

Officer Nakagawa then approached the driver's side of the vehicle, which was operated by Hebert, and, after informing Hebert of the reason for the stop, requested Hebert's driver's license, registration, and proof of insurance. Standing approximately three to six feet away from Hebert during the exchange, Officer Nakagawa noticed that "[Hebert's] eyes were red, little bit glassy." Upon receiving the requested documents from Hebert, Officer Nakagawa went back to his car to "run checks" and write up a citation for "running the red light."

Officer Nihei testified that when he arrived at the scene, he initially "took up a cover position outside [his] vehicle." He went to talk to Hebert after Officer Nakagawa had gone to his car to "run his checks." Officer Nihei stated that while talking to Hebert, he "could smell a light odor of an alcoholic type beverage" and what smelled like "mouth wash" emanating from Hebert. Officer Nihei thereafter observed "a small bottle of mouth wash" in Hebert's vehicle, some "mouth wash coming from [Hebert's] chin," and that Hebert's "eyes were a little red and glassy." Officer Nihei also recalled that Hebert did not slur while speaking, did not stumble or stagger, appeared coherent, and was "[v]ery cooperative."

Officer Nihei administered to Hebert three field sobriety tests (FSTs), including the horizontal gaze nystagmus (HGN) test. During the administration of the tests, Hebert admitted that he had consumed about "two shots of some kind of liquor" and "didn't even see [the officers] at the light." Based on Hebert's performance on the FSTs, Officer Nihei opined that Hebert failed all three tests, was "intoxicated," and could not safely operate his vehicle. Hebert was thereafter arrested and charged with one count of OVUII and one count of disregarding a red signal.

At Hebert's trial, the district court, over Hebert's objection, admitted into evidence the results of the FSTs administered to Hebert. The defense then called Officer Nihei to briefly testify as a witness and, after a few questions, rested its case.

The following exchange then took place:

THE COURT: All right. And I just wanna', I guess, give the Tachibana.

[DEFENSE COUNSEL]: Yes, please.

THE COURT: Okay. So, Mr. Hebert, you need to understand that you do have a right to tes—you have a right not to testify, and [Plaintiff-Appellee State of Hawai'i (the State) ] has the burden of proving the case against you beyond a reasonable doubt. But, on the other hand, you also have a constitutional right to testify in your defense if you wish to testify. So, the

(3) Steady red indication:
(A) Vehicular traffic facing a steady red signal alone shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until an indication to proceed is shown, except as provided in the next succeeding paragraphs.

4. "Mauka" is a Hawaiian word that means "[i]nland, upland, towards the mountain, [or] shoreward (if at sea)." Mary K. Pukui and Samuel H. Elbert, *Hawaiian Dictionary* at 242, 365 (1986).

Court needs to be satisfied that you are—you understand that and that you—it's your decision in consulting with your counsel not to give testimony in your own defense in this case. Is that your—you understand that you do have a right to testify?

[HEBERT]: I—I understand what you're saying there.

THE COURT: And that, you are volun—you know, it's your decision to not to ['sic'] testify?

[HEBERT]: Yes.

THE COURT: Okay. All right. Anything further?

[DEPUTY PROSECUTOR]: Nothing, Your Honor.

THE COURT: Okay. All right. Now, the Court's noting here that [Hebert] is charged under H.R.S. 291E–61(a)(1), which states that the offense is committed if a person operates a vehicle under the influence of an intoxicant, or ... operates or assumes actual physical control of [a] vehicle while under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty.

The Court finds that the State has met its burden of proving here ... beyond a reasonable doubt that [Hebert] is guilty of the offense charged. That the officers gave credible testimony as to their observation of [Hebert] and their administration of the [FSTs], and the results of those tests, and [Hebert's] performance on the test. And, the Court is finding that based on the evidence the Court has heard that ... the State has met its burden in this case of proving beyond a reasonable doubt [Hebert] did operate his vehicle while impaired, unable to operate his vehicle in a careful and prudent manner as required by the statute. Therefore, the Court finds [Hebert] guilty as charged.

And ... did you want to say anything to the Court before I impose the sentence, Mr. Hebert?

[HEBERT]: No. No thank you.

THE COURT: And, [Defense Counsel], did you want ...

[DEFENSE COUNSEL]: At ... this time I would like findings under Rule 23c as to my motion to strike the [HGN] test. I'd also ask that the Court stay sentencing pending the appeal on this case.

. . . .

THE COURT: The Court wants to take a short recess because I want to ...

[DEFENSE COUNSEL]: Right.

THE COURT: ... look at my notes before I make the findings under Rule 23.

[DEFENSE COUNSEL]: Sure.

THE COURT: All right. So, we'll take a recess.

(Court reconvenes)

THE COURT: All right. Just a preliminary question here before I give my findings. [Defense Counsel], you're asking—I just wanna' clarify because the [National Highway Traffic Safety Administration (NHTSA)] standards haven't come into evidence. Are you asking—what are you asking? You're asking me to rule based on the officer's administration based on the NHTSA standards, but ...

[DEFENSE COUNSEL]: Right. It's not my obligation to put the NHTSA standards into the record. Therefore, without the standards how can we tell the officer actually testified correctly.

THE COURT: Okay. But, I've got the officer testifying that he was trained under the NHTSA standards and that he followed those procedures. If you wanna' challenge him, I think you got a problem with challenging him, either when you cross-examine or in terms of showing the Court what—how he didn't follow the standards. Do you understand what I'm saying? Because I've got his testimony that he was trained under NHTSA and that's the standards that he followed.

[DEFENSE COUNSEL]: I can still challenge it because the Prosecutor has to bring the standards in in order to say that he actually did it to the standards. You see what I mean? What are the standards under NHTSA?

THE COURT: Okay. Well, I don't necessarily agree with that. But, here—

here's what I'm finding on your—and—and you can interject if you wanna' clarify what you want findings on to make sure that you've got all the findings that you want for the record.

I'm finding on the issue of the HGN that Officer Nihei testified that he was trained and certified. Trained under the NHTSA standards. And that, he administered the test in accordance with the standards that he'd been trained under. I understand there's a dispute about whether that's the case or not here. But, the Court's find— the Court's satisfied the test was properly adminis—administered based on the testimony of Officer Nihei, including the 45 degree part of the three-part HGN test. That the officer testified that he did the 45 degrees, admittedly not with any instrument, but—but by feel. And—but the Court's finding that's not necessary that he do it with an instrument as long as he's testifying that he was doing it at the 45 degree angle, and I'm satisfied here.

And, unlike *Ito,* and I did review *Ito* again, that officer has testified that he was trained and certified, unlike the officer in the *Ito* case, and, also, that he administered all three parts of the HGN test, which was one of the problems in *Ito* that only two of the three parts were administered.

But, the Court also finds that even if I strike all of the HGN results, that the rest of the evidence is sufficient to meet the State's burden to prove beyond a reasonable doubt that [Hebert] was impaired in this case. And, therefore, I make that finding also. That even—even excluding the HGN results the Court finds more than sufficient evidence to meet the State's burden of beyond a reasonable doubt that [Hebert] was impaired at the time that he was stopped by the police in this case.

Is there anything else you want me to speci . . .

[DEFENSE COUNSEL]: Yeah. I also want a ruling on the State having to bridge the nexus from the test to the actual mental faculties. The impairment.

THE COURT: The Court—the Court is finding that the ['sic'] Officer Nihei did give testimony about his training and the relationship between the test results on the field sobriety test and evidence of impairment. And, also, his own observations of the defendant in terms of impairment and his inability and—inability to complete the third test and his—the officer's opinion that he failed. But, the Court's looking at the actual observations of the officer. And, the Court's finding that the burden has been met and that there is—there is sufficient evidence to show the nexus between the tests and impairment in this case. Anything else you want me to find?

[DEFENSE COUNSEL]: No. Just the fact that I would like to stay sentencing pending appeal because I am going to appeal the case.

The district court thereafter sentenced Hebert, and this appeal followed.

## DISCUSSION

### A.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defence." Article I, section 14 of the Hawai'i Constitution similarly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for the accused's defense."

According to the United States Supreme Court,

[a]n accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail," as this Court has recognized repeatedly. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his [or her] ability to assert any other rights he [or she] may have."

*United States v. Cronic,* 466 U.S. 648, 653–54, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (footnotes omitted). The Supreme Court has also stated that

> [t]he constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 244, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)) (quotation marks omitted).

In *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), in a 6–3 decision, the United States Supreme Court invalidated a statute that permitted a judge in a nonjury trial to deny "parties" the opportunity to "deliver summations" of the evidence and, accordingly, vacated the conviction of a defendant whose trial counsel's request to make a closing argument had been denied pursuant to the statute. *Id.* at 863–65, 95 S.Ct. 2550. The Supreme Court reasoned that the opportunity to make a closing argument is an integral part of the Sixth Amendment right to counsel, as applied to the states by the Fourteenth Amendment:

> [T]he right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments. For example, in *Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783, the Court held constitutionally invalid a state statute that, while permitting the defendant to make an unsworn statement to the court and jury, prevented defense counsel from eliciting the defendant's testimony through direct examination. Similarly, in *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358, the Court found unconstitutional a state law that restricted the right of counsel to decide "whether, and when in the course of presenting his defense, the accused should take the stand." Id., at 613, 92 S.Ct. 1891. The right to the assistance of counsel has thus been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process.

> *There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge.* The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his [or her] defense.

One of many cases so holding was *Yopps v. State,* 228 Md. 204, 178 A.2d 879 (1962). The defendant in that case, indicted for burglary, was tried by the court without a jury. The defendant in his testimony admitted being in the vicinity of the offense, but denied any involvement in the crime. At the conclusion of the testimony, the trial judge announced a judgment of guilty. Defense counsel objected, stating that he wished to present argument on the facts. But the trial judge refused to hear any argument on the ground that only a question of credibility was involved, and that therefore counsel's argument would not change his mind. The Maryland Court of Appeals held that the trial court's refusal to permit defense counsel to make a final summation violated the defendant's right to the assistance of counsel under the State and Federal Constitutions:

> *"The Constitutional right of a defendant to be heard through counsel necessarily includes his [or her] right to have his [or her] counsel make a proper ar-*

*gument on the evidence and the applicable law in his [or her] favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he [or she] has waived his [or her] right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right." Id., at 207, 178 A.2d, at 881.*

*Id.* at 857–60, 95 S.Ct. 2550 (emphases added; footnotes omitted). The Supreme Court added:

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt. See *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.

The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.

This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations....

But there can be no justification for a statute that empowers a trial judge to deny absolutely the opportunity for any closing summation at all. The only conceivable interest served by such a statute is expediency. Yet the difference in any

case between total denial of final argument and a concise but persuasive summation could spell the difference, for the defendant, between liberty and unjust imprisonment.

*Id.* at 862–63., 95 S.Ct. 2550

Applying the foregoing principles to the facts in *Herring,* the Supreme Court observed that the defendant's three-day trial had been "interrupted by an interval of more than two days—a period during which the judge's memory may well have dimmed, however conscientious a note-taker he may have been." *Id.* at 864, 95 S.Ct. 2550. Moreover, if given the opportunity, defense counsel might have usefully highlighted for the judge direct conflicts in the trial testimony and inconsistencies elicited on direct and cross-examination; defense counsel also might have argued that a defense witness should be assessed more credibly than the complaining witness. *Id.* The Court then concluded:

In denying the appellant this right under the authority of its statute, New York denied him the assistance of counsel that the Constitution guarantees. Accordingly, the judgment before us is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

*Id.* at 865, 95 S.Ct. 2550.

Hebert argues, based on *Herring,* that the district court's failure to offer his counsel an opportunity to make an argument at the close of evidence constitutes plain error, requiring that Hebert receive a new trial.

We note, however, that in this case, unlike in *Herring,* the district court did not expressly deny Hebert's counsel the opportunity to make a closing argument because Hebert's counsel never affirmatively requested an opportunity to present a closing argument. Moreover, Hebert's trial counsel did not object when the district court proceeded to announce its verdict without hearing closing arguments and did not file any post-trial motions requesting reconsideration in light of the lack of closing arguments.

Accordingly, we must decide whether Hebert, by his counsel's inaction, waived the right to present a closing argument.

## B.

In *Herring,* the United States Supreme Court clearly contemplated that a defendant may waive the right to make a closing argument since it quoted, with approval, the following statement by the Maryland Court of Appeals:

> The Constitutional right of a defendant to be heard through counsel necessarily includes his [or her] right to have his [or her] counsel make a proper argument on the evidence and the applicable law in his [or her] favor, however simple, clear, unimpeached, and conclusive the evidence may seem, *unless he [or she] has waived his [or her] right to such argument,* or unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right.

422 U.S. at 860, 95 S.Ct. 2550 (quoting *Yopps v. State,* 228 Md. 204, 207, 178 A.2d 879, 881 (1962)) (emphasis added; quotation marks omitted). However, the Supreme Court did not articulate the factors that must be considered in determining what constitutes a valid waiver, and courts nationwide have experienced difficulty in evaluating whether a waiver has occurred in the specific situation presented by this case.

■ Part of the analytical difficulty arises because in *Herring,* the right to make a closing argument was given a constitutional status grounded in the Sixth Amendment, and the general rule is that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Additionally, courts are required to "indulge every reasonable presumption against waiver of fundamental constitutional rights ... and ... not presume acquiescence in the loss of fundamental rights[,]" *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019 (quotation marks and footnote omitted), and "whether there is a proper waiver should be clearly determined by the trial court," preferably on the record. *Id.* at 465, 58 S.Ct. 1019.

On the other hand, the United States Supreme Court has also noted that

[u]nder our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his [or her] attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

*Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Since there may be strategic reasons for a defense counsel's decision to forego a closing argument, the failure of a defense counsel to request the opportunity to make a closing argument, object to a trial court's rendering of judgment without closing arguments, or file post-trial motions requesting reconsideration of the judgment in light of the lack of closing arguments suggest an implied waiver of the constitutional right to present a closing argument. While such a waiver might support a finding of ineffective assistance of counsel, it is problematic to conclude that in every instance where a trial court does not offer a defendant the opportunity to make a closing argument, the court's judgment must be vacated and the case remanded for a new trial.

## C.

Courts that have wrestled with the issue presented in this case have taken different approaches in evaluating whether a valid waiver of the constitutional right to present a closing argument has occurred.

In light of the constitutional status accorded to a defendant's right to make a closing argument under *Herring,* several courts have decided that a waiver of the right to make a closing argument cannot be presumed from a defense counsel's inaction where there was no meaningful opportunity for counsel to request argument or to object. In *State v. Gilman,* 489 A.2d 1100 (Me.1985), for example, the Supreme Judicial Court of Maine held that a defendant was deprived of the constitutional right to present a closing argument when the trial court's announcement of the verdict came "on the heels of the close of evidence[.]" *Id.* at 1103 (quotation marks omitted). The court stated that "it would be

'unrealistic' to find a waiver of the right to present summation" under such circumstances, even though the judge subsequently offered to vacate the judgment and reopen the case for final argument. *Id.*

In *City of Columbus v. Woodrick,* 48 Ohio App.2d 274, 357 N.E.2d 58 (1976), the trial court found the defendant guilty during the course of a bench trial and sentenced defendant without affording her the opportunity to present a closing argument. *Id.* at 59. Counsel for the defendant neither requested an opportunity to present closing argument nor objected to the trial court's failure to offer the opportunity to present closing argument. *Id.* at 60. On appeal, the Ohio Court of Appeals reversed the defendant's conviction. The appeals court framed the determinative issue as the waiver of a constitutional right and concluded:

> There is, of course, the argument that counsel did not request the right to argue at the close of the trial; that in fact there was a brief comment by counsel upon the motion to dismiss after the city rested; and that the evidence was sufficient to sustain the conviction. The crucial stumbling block to this argument is that the United States Supreme Court, in the *Herring* case, underlined the principle that a closing argument in a criminal case involves a criminal defendant's Sixth and Fourteenth Amendment rights guaranteed by the United States Constitution. Considering this determination by the United States Supreme Court that the closing argument is part of a basic due process right, there is necessarily a presumption against a waiver of such a fundamental right.
>
> In the absence of the direct constitutional issue, we could reasonably find harmless error and affirm the trial court's judgment. Nonetheless, the *Herring* case is controlling. Furthermore, for a waiver of a constitutional right to be effective, it must be clearly established that there was an intentional relinquishment of a known right.... It is fundamental that, when a waiver of a constitutional right is involved, there is a presumption against waiver, rather than the acquiescence in the loss of a basic constitutional right. Hence, for a waiver

of a federal constitutional right to be effective, it must be plainly shown that there was an intentional relinquishment or abandonment of a known right. The transcript does not show such a waiver in this case. *Id.* (citation omitted). *See also United States v. King,* 650 F.2d 534, 536–37 (4th Cir.1981) (holding that even though defense counsel was given the opportunity to make a closing argument and failed to do so, the defendant did not waive her right to make a closing argument where the magistrate had told defense counsel that closing argument would not alter his finding of guilt); *Hunter v. Moore,* 304 F.3d 1066, 1071–72 (11th Cir. 2002) (holding that where the court never announced that it would not be hearing oral argument and immediately made a finding of guilt at the close of evidence, defense counsel did not have a meaningful opportunity to object to the lack of a closing argument and, therefore, the defendant's right to the effective assistance of counsel was violated without any necessity to show prejudice); *United States v. Spears,* 671 F.2d 991, 994 (7th Cir. 1982) (holding that "where the announcement of the verdict comes on the heels of the close of evidence, it seems unrealistic to suggest that the failure to request constitutes a waiver. Certainly, under such circumstances, it could not be said that there was 'an intentional relinquishment or abandonment of a known right or privilege.' ").

Some courts have inferred a waiver from defense counsel's inaction where there was an opportunity for defense counsel to object. *See, e.g., United States v. Martinez,* 974 F.2d 589, 592 (5th Cir.1992) (holding that the defendant waived closing argument where, at the close of evidence, the trial judge took a recess and informed counsel that closing arguments would be unnecessary and defense counsel thereafter failed to request an opportunity to present closing argument or object to the judge's comments); *Spears,* 671 F.2d at 995 (holding that where the trial judge took the case under advisement at the close of the evidence and made clear that the next hearing would be for the announcement of the verdict, defendant waived closing argument by failing to request an opportunity to make an argument during the three-week adjournment before the next hearing); *Unit-*

ed States v. Stenzel, 49 F.3d 658, 661–62 (10th Cir.1995) (holding that defense counsel effectively waived the right to present closing argument by interrupting the trial judge immediately before judgment to renew certain motions but failing to request the opportunity to make a closing argument); Kearney v. United States, 708 A.2d 262, 265 (D.C.1998) (holding that defense counsel waived closing argument by remaining silent when the court asked, "All righty?[,]" after announcing it would rule without closing argument).

Still other courts have concluded that a defendant waives the constitutional right to make a closing argument when defendant's counsel fails to request the opportunity to make a closing argument and fails to object when the trial judge begins announcing his or her judgment without allowing a closing argument.

The case of People v. Manning, 120 Cal. App.3d 421, 174 Cal.Rptr. 625 (1981), is illustrative. In Manning, the defense counsel had "rested" after telling the trial judge that he was not going to put on a defense. The following colloquy then ensued:

> THE COURT: The matter is submitted. I find the defendant guilty of Count I, not guilty of Count II.
>
> [DEFENSE COUNSEL]: Your Honor, may we select a date for probation and sentence? We're prepared to waive time to the 18th of September.
>
> THE COURT: The matter is continued to September 18th for probation and sentence hearing.

174 Cal.Rptr. at 626 (quotation marks omitted).

On appeal, the defendant, relying on Herring, argued that he had been denied his right to present a final argument. The California Court of Appeals affirmed the defendant's conviction and distinguished Herring from the facts of the case before it:

> In both Herring v. New York, supra, and In re William F., [11 Cal.3d 249, 113 Cal.Rptr. 170, 520 P.2d 986], supra, counsel affirmatively requested permission to present argument and in each case the request was denied. It would be a significant extension of those cases to hold that

there was a denial of the right to argue where there was no affirmative request by defense counsel, by inferring from the "cold record" that the court prevented such a request by the speed with which it apparently moved, when as noted that element of "speed" cannot be determined solely from a reading of reporter's transcript.

It may be argued that the problem could be avoided by requiring that in each case, where trial is by the court, the judge affirmatively and on the record obtain a waiver of argument. In our view, that would simply be one more instance of improperly shifting the responsibility of counsel to the shoulders of the trial judge and would open up a whole new area for appeal where the question would then be, not whether the defendant had a fair trial and was adequately represented, but whether or not the trial judge recited the correct "magic words" at the correct time and whether the waiver, in view of the judge's tone of voice and demeanor, was in fact a voluntary waiver.

The issue is a simple one, factual in nature. Did defense counsel desire to argue or didn't he [or she], and if he [or she] did, was he [or she] prevented from doing so? If counsel truly desired to argue, one would expect that at some point in the proceedings, even as late as on a motion for a new trial, he [or she] would have at least mentioned it. Yet . . . here, the issue never came up until the case reached the Court of Appeal.

A trial judge, like anyone else, is entitled to "face his [or her] accuser." If counsel fails to request, on the record, an opportunity to argue, and then wishes to contend that he [or she] was prevented by the trial judge from making the request, he [or she], in some fashion, ought to bring it to the trial court's attention rather than appear to acquiesce in the proceedings only to later raise the issue on appeal along with an unsupported claim that to have made the request in the trial court would have been fruitless.

An examination of the entire record here, leads to the logical conclusion—that

trial counsel never intended nor desired to argue the case and everyone in the court room knew it.

The trial judge was a man of extensive trial experience, both as a lawyer and a judge, with particular expertise in the criminal law. The tenor of the very experienced defense counsel's limited cross-examination of the prosecution witnesses and the sparsity of his objections to the introduction of the evidence, are graphic evidence that defense counsel knew that the result was a foregone conclusion.

Although the evidence would have supported a conviction as to both of the charged counts, the trial judge without any suggestion on the record from defense counsel, or any evidence from the defendant, found the defendant guilty on one count and *not guilty* of the other. Only the most naive neophyte could believe that defense counsel really desired, under the circumstances, to make an argument to the court, or more importantly, that he did not expect the exact results which obtained, or that he was in any way prevented by the judge from making an argument.

*In summary we hold that the alleged denial of the right to present argument cannot be raised for the first time on appeal and that the burden is on defendant to make his [or her] desire to present argument known to the trial court.*

174 Cal.Rptr. at 628 (emphasis added). *See also Lee v. State*, 175 Ind.App. 17, 369 N.E.2d 1083, 1085 (1977) (holding that, although "the opportunity to make final argument is required as a basic element of the adversary criminal process," where "[n]o showing has been made that appellant requested final argument or was denied an opportunity to make one[,] ... it cannot be claimed that the trial court denied him the right"); *State v. Hale*, 472 S.W.2d 365, 367 (Mo.1971) (where "no request to make an oral argument was made, and there was no request to withdraw the finding of guilt to permit oral argument[,]" there was no "denial of the right to argue, as appellant contends, but at most only a failure on the part of the court to require oral argument"); *State v. Rojewski*, 202 Neb. 34, 272 N.W.2d

920, 923 (1979) (no reversible error resulted from the fact that no closing arguments took place as defendant made no request to present argument); *Long v. State*, 74 P.3d 105, 108 (Okla.Crim.App.2003) (holding that "[w]here Appellant did not request closing argument or object when the trial court did not ask for same, the right to argue is waived").

### D.

██ Our review of the record in this case indicates that Hebert's two-day trial was interrupted by eight intervening days. While closing argument could have helped to refresh the district court about the evidence and any inconsistencies in the testimony, the thrust of the defense below was to challenge the admissibility of the HGN test results and the nexus between the FST results and Hebert's impairment to drive, a question of law. Indeed, Hebert's trial counsel spent a great deal of time following the announcement of the district court's verdict, requesting specific findings relevant to the admissibility question and arguing why the findings were necessary.

Additionally, the transcripts reveal that after the district court engaged Hebert in the *Tachibana* colloquy and Hebert declined to testify, the district court asked the parties: "Okay. All right. *Anything further?*" (Emphasis added.) The deputy prosecutor replied, "Nothing, Your Honor[,]" and while the transcripts do not indicate any verbal response from Hebert's counsel, they certainly do not reflect any interest on his part to make a closing argument or any concern that the verdict was announced without his having made one.

Instead, immediately following the announcement of the district court's verdict, Hebert's counsel requested that the court make findings as to Hebert's motion to strike the HGN test results and stay sentencing pending appeal. No request was made that the court reconsider its verdict and allow Hebert's counsel to make a closing argument. The district court judge then took a recess to study her notes before making the requested findings. After the recess, the judge asked defense counsel numerous questions to con-

firm her understanding of the findings that Hebert's counsel wanted her to make for purposes of appeal. When the judge orally announced her findings, she asked defense counsel several times whether he wanted her to find anything else.

All in all, the record reflects that the district court judge was extraordinarily patient and accommodating with defense counsel and that if defense counsel had wanted to make a closing argument, the judge would not have denied the request. Under the circumstances, we conclude that Hebert waived his right to make a closing argument and that the district court's failure to affirmatively offer Hebert's counsel the opportunity to present a closing argument at trial did not deprive Hebert of his right to present a closing argument.

## CONCLUSION

Based on the foregoing discussion, the judgments entered by the district court on March 19, 2003 are affirmed.